# THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOY GILPIN,

        Plaintiff,

v.                                          No. Civ. 11-336 LH/LAM

CLOVIS POLICE DEPARTMENT; CITY OF CLOVIS;
AGENT SHAWN GORE; CHIEF DEPUTY MALIN PARKER;
and PAUL NELSON, in their individual and
representative capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the following motions: (1) Defendants' Motion for Summary Judgment (Doc. 12), filed by Defendants City of Clovis, Clovis Police Department, and Paul Nelson (collectively, "the Clovis Defendants"); (2) Plaintiff Joy Gilpin's Motion to Defer Consideration of or Deny Defendants City of Clovis' and Nelson's Motion for Summary Judgment (Doc. 17); (3) Plaintiff's Motion to Amend Complaint (Doc. 26); and (4) Motion for Summary Judgment (Qualified Immunity) (Doc. 28), filed by Defendants Roosevelt County Sheriff's Office, Shawn Gore, and Malin Parker (collectively, "the Roosevelt County Defendants"). The Court, having considered the motions, briefs, pleadings, evidence, relevant law, and otherwise being fully advised, concludes that Plaintiff's § 1983 claims should be dismissed with prejudice against all Defendants. The Court also concludes that the Clovis Defendants are entitled to dismissal with prejudice as to Plaintiff's state law claims against them. The Court will therefore grant the Clovis Defendants' Motion for Summary Judgment and deny Plaintiff's motion to defer consideration of or deny the Clovis Defendants' motion for summary judgment. The Roosevelt County Defendants,

however, have not specifically requested dismissal or summary judgment on Plaintiff's state law claims, so the Court will not dismiss those claims and will only grant in part the Roosevelt County Defendants' Motion for Summary Judgment (Qualified Immunity).  Because state law claims against the Roosevelt County Defendants will remain, the Court will grant in part Plaintiff's motion to amend the complaint to assert the proposed state law claims against the Board of County Commissioners of Roosevelt County ("the Board"), but will deny Plaintiff's request to add § 1983 claims against the Board.

## I.    INTRODUCTION[1]

On November 19, 2008, Malin Parker, Chief Deputy of the Roosevelt County Sheriff's Office; Shawn Gore, Agent with the Region V Task Force; and Paul Nelson, "a computer forensic examiner with the Clovis Police Department," executed a search warrant upon Plaintiff's residence. (Notice of Removal, Ex. A ("Complaint") (Doc. 1-1) ¶ 2.)  During the search, a computer and thumb drive belonging to Plaintiff's husband, Michael Gilpin, were seized.  (*Id.*, Ex. A ¶ 3.)  On that thumb drive were 18 photographs (hereinafter "the 18 photographs") with Plaintiff present in, or directly involved in, acts with her husband and "alleged children under the age of eighteen (18) years."  (*See id.*, Ex. A ¶ 4.)  On December 2, 2008, Plaintiff was arrested and charged with 18 counts of Sexual Exploitation of Children and 18 counts of Conspiracy to Sexual Exploitation of Children.  (*Id.*, Ex. A ¶ 5.)  Although Plaintiff tried to explain to the arresting officers and detention staff that there was an error, she was incarcerated for approximately 163 days.  (*Id.*, Ex. A ¶ 13.)

---

[1]The following are the allegations contained in Plaintiff's Complaint (Doc. 1-1).  Plaintiff has filed a motion to amend her complaint and attached a proposed First Amended Complaint for Negligence, Wrongful Arrest, and False Imprisonment (Doc. 26-1).  The First Amended Complaint proposes to substitute the Board as a defendant instead of Roosevelt County Sheriff's Office.  In all other respects, the First Amended Complaint mirrors the Complaint.

On May 11, 2009, Agent Gore contacted Constance Bundy, the alleged female in the 18 photographs.  (*Id.*, Ex. A ¶ 6.)  Ms. Bundy notified Agent Gore of her date of birth and her age at the time the pictures were taken, and she provided a driver's license, showing she was over the age of 18 years at the time the photographs were taken.  (*Id.*, Ex. A ¶¶ 7-8.)  Agent Gore provided this information, along with a copy of Ms. Bundy's driver's license, to Deputy District Attorney Donna Mowrer on May 11, 2009.  (*Id.*, Ex. A ¶ 9.) Plaintiff was incarcerated from December 2, 2008, until May 15, 2009.  (*Id.*, Ex. A ¶ 12.)  The charges against her were dismissed on May 19, 2010, for lack of probable cause.  (*Id.*, Ex. A ¶ 10.)

## II.   PROCEDURAL HISTORY

Plaintiff subsequently filed suit for "negligence, malicious prosecution, wrongful arrest and false imprisonment and violation of 42 U.S.C. § 1983" against Defendants.  (*Id.*, Ex. A ¶ 14.) Plaintiff alleges, "As a direct and proximate result of the negligence of Shawn Gore, Malin Parker and Paul Nelson, Plaintiff was arrested."  (*Id.*, Ex. A ¶ 11.)  Defendants removed the case to federal court on the basis of federal question jurisdiction.

On May 27, 2011, the parties stipulated to the dismissal without prejudice of all Plaintiff's 42 U.S.C. § 1983 damages claims against Defendant Roosevelt County Sheriff's Office. (Stipulation of Dismissal (Doc. 11).)

On May 31, 2011, the Clovis Defendants filed a motion for summary judgment, seeking dismissal of all § 1983 claims against them because they did not violate any constitutional right of Plaintiff and they are entitled to qualified immunity.  The Clovis Defendants also argue that they are immune from suit under the New Mexico Tort Claims Act ("NMTCA") as to Plaintiff's state law claims.

The parties submitted their Joint Status Report and Provisional Discovery Plan (Doc. 14) on

June 6, 2011.  In the Joint Status Report, Plaintiff asserts that she "brings suit under 42 U.S.C.

§ 1983 and state law alleging negligence, wrongful arrest and false imprisonment against all of the

Defendants." (Joint Status Report (Doc. 14) at 1.)  The parties stipulated and agreed that the law

governing the case is the law of 42 U.S.C. § 1983, qualified immunity, and the NMTCA.  (*Id.* at 2.)

On June 15, 2011, Plaintiff filed a "Motion to Defer Consideration of or Deny Defendants

City of Clovis' and Nelson's Motion for Summary Judgment" (Doc. 17) under Federal Rule of Civil

Procedure 56(d).  Plaintiff requests that the Clovis Defendants' motion for summary judgment be

deferred or denied until she is able to conduct discovery.

On July 12, 2011, Plaintiff filed a Motion to Amend Complaint (Doc. 26), seeking leave to

substitute the Board of Commissioners of Roosevelt County as a defendant, the proper entity to

name instead of the Roosevelt County Sheriff's Office.  The Roosevelt County Defendants did not

file a response to the motion to amend.  Instead, on July 14, 2011, they filed their own motion for

summary judgment and qualified immunity.  Plaintiff, in response, requests that the Court defer or

deny the motion to allow her time to take discovery under Rule 56(d).

The Clovis Defendants and the Roosevelt County Defendants each filed motions to stay

discovery pending a ruling on their motions for summary judgment and qualified immunity.  The

Court subsequently stayed discovery pending resolution of the motions for qualified immunity.  (*See*

Stipulated Order Staying Discovery (Doc. 32).)

## III.    FACTUAL BACKGROUND[2]

---

[2]Plaintiff has moved, under Federal Rule of Civil Procedure 56(d), for additional
discovery on certain facts so as to oppose, at a later date, some of the facts asserted by
Defendants.  The vast majority of the facts set forth by Defendants, however, are undisputed and
are not facts for which Plaintiff has moved for additional discovery.  Unless otherwise noted, the
facts set forth in this section are undisputed for purposes of the motions for summary judgment.
The Court will note what facts on which Plaintiff seeks discovery so as to oppose.

Defendants Shawn Gore and Malin Parker are sworn, commissioned law enforcement officers employed by the Roosevelt County Sheriff's Office.  (Roosevelt County Defs.' Mot. for Summ. J. (Doc. 28), Undisputed Fact ("UF") ¶ 1.)  Defendant Gore is a Sergeant and Defendant Parker is Chief Deputy.  (*Id.*)

On November 19, 2008, the Ninth Judicial District Court, County of Roosevelt, State of New Mexico, upon its finding of probable cause, issued a Search Warrant authorizing a search of the premises located at 400 North Avenue K, Apartment #13, Portales, New Mexico.  (*See id.*, Ex. A-1 ("Search Warrant") (Doc. 28-1 at 13 of 37).)  Michael Gilpin and his wife, Plaintiff Joy Gilpin, lived in the apartment at that time.  (*See id.*, UF ¶ 3; Pl.'s Compl. ¶¶ 2-3.)  Mr. Gilpin was a registered sex offender with the State of New Mexico, pursuant to NMSA 1978, § 29-11A-1, *et seq.*  (Roosevelt County Defs.' Mot. for Summ. J. (Doc. 28), UF ¶ 3.)

On November 19, 2008, Defendant Gore, Defendant Parker, and other sheriff's deputies executed the Search Warrant and seized items including computers, photographs, photographic negatives, and data storage devices.  (*See id.*, UF ¶ 4.)  Defendant Paul Nelson, a Computer Information Technologist with the City of Clovis, accompanied the deputies.  (*See id.*, Ex. A (Aff. of Shawn Gore) ¶ 7; Clovis Defs.' Mem. Br., Ex. A ¶ 1; Pl.'s Compl. ¶ 2.)[3]  Defendant Nelson conducted a forensic examination of the seized computers and a thumb drive and determined that

---

[3]Plaintiff asserts that, during the execution of the search warrant, Defendant Nelson was identified to her as a deputy with the Roosevelt County Sheriff's Office.  Plaintiff seeks discovery on the issue of whether Defendant Nelson was a law enforcement officer, or acting in the scope of duties of a law enforcement officer, when the deputies executed the search warrant. Defendant Nelson has stated in his affidavit that he is not a certified law enforcement officer, has never been issued a law enforcement commission, and only assists in rendering technical computer assistance to law enforcement agencies in Curry and Roosevelt Counties from time to time.  (*See* Clovis Defs.' Mem. Br., Ex. A ¶¶ 1, 3.)  He attests that he works for the City of Clovis and his direct supervisor is the City Manager for the City of Clovis.  (*Id.*, Ex. A ¶ 2.)

they contained thousands of digital photographic images of a sexual nature, including many sexual images that appeared to involve children under the age of 18 years. (*See* Roosevelt County Defs.' Mot. for Summ. J. (Doc. 28), UF ¶ 4 and Ex. A ¶ 9.)

On or about December 1, 2008, the Roosevelt County Sheriff's Office consulted Tawnya Burton, a Registered Nurse in New Mexico since 1986 and a Sexual Assault Nurse Examiner ("SANE") since 2002. (*Id.*, UF ¶ 5.) Since 2003, Ms. Burton has served as the Clinical Coordinator of the SANE Program of the Ninth Judicial District, and since 2007, she has been certified by the American College of Forensic Examiners as a Certified Forensic Nurse and by the International Association of Forensic Nursing as a SANE for Adults, Adolescents and Pediatrics. (*Id.*) As of December 2008, Ms. Burton had reviewed approximately 400 cases involving alleged sexual abuse – over 250 sexual assault examinations on adults and 150 sexual assault examinations on children. (*Id.*)

In the presence of Defendants Nelson and Parker, Ms. Burton reviewed approximately 200 of the seized photographic images. (*Id.*, UF ¶ 6 and Ex. A ¶ 11.) Her written report, based on the best of her abilities, experience, and training, included the following general findings: most of the photos viewed were of images of children most likely under the age of 18 years, and the photographs included images of children with partial and fully exposed genitalia and in sexualized positions. (*Id.*, UF ¶ 6 and Ex. A-2.)

Only 18 of the photographic images recovered involved Plaintiff. (*Id.*, UF ¶ 7; Pl.'s Compl. ¶ 4.) Based on other photographs not involving Plaintiff, the State of New Mexico charged Michael Gilpin with 100 felony counts of sexual exploitation of children in violation of NMSA 1978, § 30-6A-3(A), 19 counts of conspiracy, and one count of tampering with evidence. (Roosevelt County Defs.' Mot. for Summ. J. (Doc. 28), UF ¶ 7.) Mr. Gilpin ultimately pleaded guilty to 100

felonies and was sentenced to a term of incarceration of 30 years, with 20 years suspended.  (*Id.*, UF ¶ 7 and Ex. A-3.)

Based on the 18 photographs depicting Plaintiff, Defendant Gore prepared an Affidavit for Arrest Warrant and a Criminal Complaint against Plaintiff, charging her with 18 counts of sexual exploitation of children, in violation of NMSA 1978, § 30-6A-3D, and 18 counts of conspiracy.  (*Id.*, UF ¶ 8.)  In the Affidavit for Arrest Warrant, Defendant Gore included the following assertions.  On November 19, 2008, Shirley Stewart, the manager at the apartments where the Gilpins lived, called the Roosevelt County Sheriff's Office regarding concerns that Mr. Gilpin, a registered sex offender, had taken photographs of minor children.  (*Id.*, Ex. A-4 (Doc. 28-1 at 22 of 37).)  Defendants Gore and Parker interviewed Ms. Stewart that day, and she related that Mr. Gilpin had purchased camera and computer equipment, which included computer equipment that would prevent police from tracking what he was doing, and she believed he had attempted to take photographs of children related to her.  (*See id.*, Ex. A-4 (Doc. 28-1 at 22-24 of 37).)  They also interviewed Diane Ashley who, among other things, stated that, on one occasion, Ms. Gilpin stopped Ms. Ashley's nine year-old daughter, gave her earrings, and told her not to tell anyone about it.  (*Id.*, Ex. A-4 (Doc. 28-1 at 23 of 37).)  She said that both Mr. and Ms. Gilpin would invite her child over to watch movies without inviting anyone else, and Ms. Ashley allowed her child to go over on more than one occasion.  (*See id.*)  One of the children confirmed that Mr. Gilpin had taken a photograph of her while she was outside on her bike.  (*Id.*, Ex. A-4 (Doc. 28-1 at 24 of 37).)  Upon obtaining and executing a search warrant of the Gilpins' home based on this information, officers observed Mr. Gilpin attempting to delete files from the computer, which they secured.  (*See id.*, Ex. A-4 (Doc. 28-1 at 24-25 of 37).)  On November 23, 2008, Defendant Nelson related to Defendant Gore that he had observed and reviewed numerous pictures and that several of the photographs depicted individuals

under 18 years of age in sexually oriented manners.  (*Id.*, Ex. A-4 (Doc. 28-1 at 25 of 37).)

Defendant Gore then stated in the Affidavit for Arrest Warrant that on December 1, 2008, the Roosevelt County Sheriff's Office enlisted Ms. Burton's assistance.  (*Id.*)  He set forth in detail Ms. Burton's credentials and experience.  (*Id.*)  The following is what the Affidavit for Arrest Warrant contained regarding Ms. Burton's assessment of the photographs she reviewed that had been seized from the Gilpins' residence:

> Burton made an initial assessment and review of approximately 200 photo images and in her report she made the following general findings.  That most of the photos viewed were of images of children most likely under the age of eighteen years.  She reported that the photos included images of children most likely under the age of eighteen years.  She reported that the photos included images of children with partial and fully exposed genitalia, Children in sexu[a]lized positions, . . . .  Burton's report does not speak to the truthfulness or authenticity of the photos themselves and is based upon her review of the images only to the best of her abilities and levels of licensure, experience and training.  I personally spoke with Burton who told me that based upon the review that she observed at minimum one hundred separate images depicting the above described acts.
>
> I again spoke with Mr. Nelson who related to me that the images reviewed by Burton had been images that had been recovered from a thumb drive, which was s[ei]zed during the execution of the search warrant, the images had been clearly downloaded to the thumb drive. . . . .
>
> I further spoke with Chief Deputy Sheriff Malin Parker who related to me that he was present with Burton during the review and that at minimum, eighteen separate photos included Gilpin's spouse, Joy Gilpin, present in or directly involved in acts with Michael Gilpin and children under the age of eighteen years.

(*Id.*, Ex. A-4 (Doc. 28-1 at 26 of 37).)

Deputy District Attorney Donna J. Mowrer of the Office of the Ninth Judicial District Attorney was the lead prosecuting attorney in the cases of *State v. Michael Gilpin*, D-911-CR-2008-206, and *State v. Joy Gilpin*, D-911-CR-2008-207.  (*Id.*, UF ¶ 10 and Ex. B (Doc. 28-2) ¶ 4.)  Ms. Mowrer reviewed the Affidavit for Arrest Warrant and Criminal Complaint for Joy Gilpin as to both form and substance and noted her approval on the documents on December 2, 2008.  (*See id.*, UF

¶ 11, Ex. B (Doc. 28-2) ¶ 11, Ex. A-4 (Doc. 28-1 at 27 of 37).)  On December 2, 2008, a judge for the Magistrate Court of Roosevelt County, based on a finding of probable cause, signed the Arrest Warrant for Ms. Gilpin.  (*Id.*, UF ¶ 12 and Ex. A-5 (Doc. 28-1).)  The court set a bond for Ms. Gilpin at $250,000 cash.  (*Id.*)  Defendant Gore asserts that he did not advise the court as to what type or amount of bond the court should set.  (*Id.*, Ex. A (Doc. 28-1) ¶ 17.)  On December 2, 2008, Roosevelt County Sheriff's deputies, not including any of the defendants, executed the Arrest Warrant on Plaintiff, took her into custody without incident, and booked her into the Roosevelt County Detention Center.  (*Id.*, Ex. A (Doc. 28-1) ¶ 18.)

On December 2, 2008, following her arrest, Defendant Gore interviewed Plaintiff after she waived her *Miranda* rights.  (*Id.*, Ex. A (Doc. 28-1) ¶ 19 and Ex. A-6 (Doc. 28-1 at 29 of 37).)  Plaintiff denied the charges, and upon Defendant Gore showing her the 18 photographs, Plaintiff identified the female who was depicted with her and Mr. Gilpin as Constance Bundy.  (*Id.*, Ex. A (Doc. 28-1) ¶ 19.)  Plaintiff further stated that the photographs were taken 17 years ago in Toledo, Ohio, at a time when Ms. Bundy was over the age of 18 years and that the photographs depicted consensual acts.  (*Id.*)

Defendant Gore asserts that, sometime after this interview and prior to the Grand Jury proceedings, he conveyed to Ms. Mowrer verbally and accurately all the information Plaintiff provided during the interview.  (*See id.*, Ex. A (Doc. 28-1) ¶ 20 and Ex. B (Doc. 28-2) ¶ 20.)  He further asserts that during the next few days after December 2, 2008, he "utilized Google, Facebook and possibly other internet sites attempting to locate a person in Toledo, Ohio named Constance Bundy," but he was unsuccessful.  (*Id.*, Ex. A (Doc. 28-1) ¶ 21.)[4]

---

[4]If permitted, Plaintiff asks for discovery on this fact and asserts that she expects to discover that Defendant Gore did nothing other than a simple Google search or phone index

On December 5, 2008, the Magistrate Court conducted a first appearance, appointed a Public Defender to represent Plaintiff, and continued bond at $250,000 cash. (*See* Roosevelt County Defs.' Mot. for Summ. J., Ex. A-7 (Doc. 28-1 at 30-32 of 37).) Defendant Gore contends that, after this point, Deputy District Attorney Mowrer assumed control of and directed the course of the prosecution against Plaintiff. (*See id.*, Ex. A (Doc. 28-1) ¶ 23.) Ms. Mowrer also asserts that, following Plaintiff's initial appearance, the District Attorney's Office assumed control of the case and neither the Sheriff, nor Defendants Gore or Parker, had authority to prosecute, plea bargain, and/or dismiss any charges against Plaintiff. (*Id.*, Ex. B (Doc. 28-2) ¶¶ 15-16.)

On December 8, 2008, Ms. Mowrer filed in the Roosevelt County Magistrate Court a Target Notice, notifying Plaintiff that she was a target of a grand jury proceeding into the charges arising from her arrest, that she had an opportunity to testify before the Grand Jury that was set to convene on December 12, 2008, and that she had the right to be represented by an attorney who could be present and advise her should she choose to testify before the Grand Jury. (*See id.*, Ex. A-8 (Doc. 28-1 at 33 of 37) and Ex. B (Doc. 28-2) ¶ 17.) Ms. Mowrer asserts that she, in consultation with the District Attorney, made all decisions as to what testimony and other evidence to present to the Grand Jury. (*Id.*, Ex. B (Doc. 28-2) ¶ 18.) Ms. Mowrer avers that she "presented what [she] deemed to be the necessary and appropriate evidence to the Grand Jury." (*Id.*, Ex. B (Doc. 28-2) ¶ 20.) Plaintiff did not testify before the Grand Jury. (*Id.*)

On December 12, 2008, the Grand Jury indicted Plaintiff on 18 counts of Sexual Exploitation

---

search. (Pl.'s Resp. (Doc. 35) ¶ 12.) She also expects to discover, "based on the fact that they prosecuted and persecuted Mrs. Gilpin for more than a year following her presentation to the County Defendants of evidence showing her innocence," that Defendant Gore, contrary to his assertions in his Affidavit, did not provide all relevant information at all times to all individuals. (*Id.* ¶ 17.)

of Children (a second degree felony) and 18 counts of conspiracy to sexually exploit children (a third degree felony) in violation of NMSA §§ 30-6A-3D, 30-28-2B(3), and 30-6A-3D.  (*See id.*, Ex. A (Doc. 28-1) ¶ 26; Ex. A-4 (Criminal Complaint) (Doc. 28-1 at 21 of 37); Ex. B (Doc. 28-2) ¶ 19.) On December 15, 2008, after finding probable cause based on the indictment, the Magistrate Court for Roosevelt County bound Plaintiff over for trial to the district court.  (*See id.*, Ex. A-9 (Doc. 28-1 at 34 of 37); Ex. B (Doc. 28-2) ¶ 19.)

On May 11, 2009, Christian Christensen, Plaintiff's public defender, contacted Defendant Gore, stating that he had obtained a telephone number for Constance Bundy.  (*See id.*, Ex. A (Doc. 28-1) ¶ 27.)  At approximately 10:18 a.m. that day, Defendant Gore called the phone number and spoke to a female voice who identified herself as Constance Bundy.  (*Id.*)  Ms. Bundy told Defendant Gore that she lived with the Gilpins in Toledo, Ohio, around the time she graduated from high school in 1988; that she recalled photographs of a sexual nature taken of her and the Gilpins; that the acts shown had been consensual; and that she believed the acts had occurred sometime between 1991 and 1993 when she was over 21 years of age.  (*Id.*)  She said her date of birth was August 28, 1968.  (*Id.*)  Defendant Gore requested that Ms. Bundy send him a copy of her driver's license and try to obtain more specific dates for when the photographs had been taken.  (*Id.*)

That same day, Defendant Gore spoke to Ms. Mowrer and related his telephone conversation with the caller identified as Ms. Bundy.  (*Id.*, Ex. A (Doc. 28-1) ¶ 28.)  Defendant Gore asserts that he did not omit or misrepresent any facts regarding his conversation with Ms. Bundy to Ms. Mowrer.  (*Id.*)  Defendant Gore subsequently contacted Mr. Christensen and informed him of the conversation with Ms. Bundy.  (*Id.*)

On May 14, 2009, the district court, on Plaintiff's request, held a hearing to review the conditions of Plaintiff's confinement.  (*See id.*, Ex. B (Doc. 28-2) ¶ 25.)  Without opposition from

the State, the court ordered Plaintiff released on her own recognizance on a $25,000 appearance bond.  (*Id.* and Ex. B-1 (Doc. 28-2 at 11-12 of 28).)  Plaintiff executed the bond, and on May 15, 2009, was released from custody.  (*See id.*; Pl.'s Compl. ¶ 12.)

Subsequently, Ms. Bundy sent Defendant Gore a letter with an estimated date range for when the 18 photographs were taken as sometime between December 6, 1991, and May 6, 1992, and a copy of her expired driver's license showing that her birth date was August 28, 1968, and thus, according to Ms. Bundy, she would have been in her early twenties when the photographs were taken.  (Roosevelt County Def.'s Mot. for Summ. J., Ex. A (Doc. 28-1) ¶ 29 and Ex. A-10 (Doc. 28-1 at 35 of 37).)  Defendant Gore asserts that he provided a copy of Ms. Bundy's letter to Ms. Mowrer and Mr. Christensen.  (*Id.*)  Ms. Mowrer asserts that, based on her awareness that driver's licenses can be forged or altered and that it is difficult to tell the authenticity of a driver's license by looking at its photocopy, Ms. Mowrer determined that there was not sufficient evidence for the State of New Mexico to dismiss the charges against Plaintiff.  (*Id.*, Ex. B (Doc. 28-2) ¶ 24.)

On May 18, 2009, following a pretrial conference, Ms. Mowrer suggested to Defendant Gore that he should attempt to have a law enforcement officer in Toledo meet with Ms. Bundy in person and attempt to obtain a firm, positive identification of the young woman depicted in the photographs as her and a date certain on which the photographs had been taken.  (*See id.*, Ex. A (Doc. 28-1) ¶ 28, 31, and Ex. B (Doc. 28-2) ¶ 22.)  By letter dated July 13, 2009, Defendant Gore wrote to Detective David Morford of the Toledo Police Department, whom he had previously contacted, asking that he make contact with Ms. Bundy, confirm her identity, and positively identify her as the female in the attached, cropped copies of the photographs with only the heads shown.  (*See id.*, Ex. A (Doc. 28-1) ¶ 34 and Ex. A-11.)  Detective Gore subsequently learned from Detective Morford that he had made several unsuccessful attempts to contact Ms. Bundy; he left several message for her; and when

he finally contacted her, she identified the photographs but was not able to establish a firm date on which they had been taken.  (*Id.*, Ex. A (Doc. 28-1) ¶ 35.)  Defendant Gore asserts that he immediately and accurately conveyed to Ms. Mowrer the information he received from the detective.  (*Id.*)

On July 20, 2009, Mr. Christensen filed on behalf of Plaintiff a Motion to Dismiss in the Ninth Judicial District Court.  (*Id.*, Ex. B-2 (Doc. 28-2 at 13-15 of 28).)  The motion was based on the purported exculpatory evidence provided by Ms. Bundy to Defendant Gore, including her letter.  (*See id.*)  On July 23, 2009, Ms. Mowrer filed a response opposing the motion to dismiss on the grounds that the issues of whether Ms. Bundy is the person depicted in the photographs and of her age at the time the photographs were taken are factual issues for the jury to decide.  (*See id.*, Ex. B-3 (Doc. 28-2 at 16-17 of 28).)  On August 11, 2009, the district court held a hearing on the motion to dismiss, and on September 8, 2009, the district court filed an Order denying the motion.  (*See id.*, Ex. B-4 (Doc. 28-2 at 18 of 28).)

On August 11, 2009, Mr. Christensen filed a Witness List on behalf of his client identifying Ms. Bundy as a trial witness.  (*See id.*, Ex. B-5 (Doc. 28-2 at 19 of 28).)  On December 17, 2009, Mr. Christensen filed a motion for continuance of the trial, then set to begin on January 4, 2010, because Ms. Bundy was not available on that date and there was not sufficient time to compel her attendance via a subpoena.  (*See id.*, Ex. B-6 (Doc. 28-2 at 20 of 28).)  The district court granted the motion to continue.  (*See id.*)

On February 25, 2010, Mr. Christensen filed with the Roosevelt County District Court a Motion to Dismiss for Lack of Probable based, in part, on an affidavit from Ms. Bundy stating she was over 18 years of age when the 18 photographs were taken with her consent.  (*See id.*, Ex. B-7 (Doc. 28-2 at 22-25 of 28).)  On March 8, 2010, Ms. Mowrer filed a response opposing the motion

13

to dismiss.  (*See id.*, Ex. B-8 (Doc. 28-2 at 27-28 of 28).)

On May 14, 2010, Mr. Christensen brought Ms. Bundy, in person, to Defendant Gore's office where Defendant Gore interviewed her.  (*See id.*, Ex. A (Doc. 28-1) ¶ 37.)  Ms. Bundy stated that she was 23 years old when the 18 photographs were taken.  (*Id.*)  At that point, Defendant Gore believed Ms. Bundy's statement and conveyed the information he obtained to Ms. Mowrer and Mr. Christensen.  (*See id.*, Ex. A (Doc. 28-1) ¶¶ 38-39.)  On May 19, 2010, Ms. Mowrer filed on behalf of the State a Notice of Nolle Prosequi in Plaintiff's case.  (*Id.*, Ex. A-12 (Doc. 28-1 at 37 of 37).)

## IV.   ANALYSIS

Upon considering all the motions, briefs, and the pleadings in this case, the Court concludes that Plaintiff's § 1983 claims must be dismissed as to all Defendants.  Although the parties have brought the merits of the case before the Court in the context of a motion for summary judgment, after examining Plaintiff's Complaint to determine if the discovery she seeks will allow her to establish her federal claims and avoid qualified immunity, the Court is convinced that Plaintiff is not entitled to any discovery in the first instance on her § 1983 claims because the Complaint itself fails to state a plausible federal claim against any of the Defendants under Rule 12(b)(6).

Despite the glaring inadequacies of Plaintiff's Complaint, the Court, in theory, could dismiss without prejudice or allow Plaintiff leave to amend to state a federal claim.  The Court, however, agrees with Defendants that, based on the undisputed evidence presented, Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims, and Plaintiff has not shown that additional discovery under Rule 56(d) will enable her to rebut Defendants' qualified immunity assertions.  Accordingly, the Court concludes that leave to amend would be futile, and therefore, for the reasons that follow, the Court will dismiss Plaintiff's § 1983 claims with prejudice.

Plaintiff, however, also asserts a state cause of action for negligence.  Although unclear,

Plaintiff may also be asserting state causes of action for malicious abuse of process and/or false arrest and imprisonment against Defendants. The Clovis Defendants have argued that they are entitled to summary judgment on the state causes of action asserted against them based on the failure of the NMTCA to waive immunity for them. For the reasons that follow, the Court agrees and will dismiss the Clovis Defendants from this suit with prejudice. The Roosevelt County Defendants, however, have not addressed the state claims asserted against them in any of the briefs, so the Court will not address the validity of the state law claims against the Roosevelt County Defendants at this time.

### A.     Plaintiff's § 1983 Claims must be Dismissed for Failure to State a Claim

Qualified immunity shields federal officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant raises the qualified immunity defense, the plaintiff must demonstrate that (1) the facts alleged show that the officer's conduct violated a constitutional right and (2) the right was clearly established at the time of the conduct. *See Pearson v. Callahan*, 555 U.S. 223, 231-35 (2009); *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). Plaintiff's case fails at the first step in the qualified immunity analysis – the facts alleged by Plaintiff in her complaint are so poorly developed that they do not show that any of the Defendants violated a constitutional right.

Federal Rule of Civil Procedure 8 provides that a federal court complaint need contain only "short and plain" statements of (1) the ground supporting the district court's subject matter

jurisdiction, (2) "the claim showing that the pleader is entitled to relief," and (3) the demand for the relief the pleader seeks. Fed. R. Civ. P. 8(a). Even under notice pleading, enough factual allegations must be contained in the complaint to provide fair notice of the nature of the claim against the defendant. *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). A complaint must contain either direct or inferential allegations respecting all the material elements necessary to recover on a cause of action. *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). In short, the complaint must "provide enough factual allegations for a court to infer potential victory." *Id.*

To survive a dismissal, a plaintiff must nudge his claims across the line from conceivable to plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950-51 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. Although a court must assume the veracity of well-pleaded factual allegations, such deference is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* If the allegations in the complaint are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff has not met the plausibility standard. *Robbins,* 519 F.3d at 1247.

To meet the plausibility standard in the qualified immunity context, a plaintiff must allege sufficient facts to show that the defendants plausibly violated their constitutional rights and that those rights were clearly established at the time. *Id.* at 1249. "This requires enough allegations to give the defendants notice of the theory under which their claim is made." *Id.* As the Tenth Circuit explained:

[C]omplaints in § 1983 cases against individual government actors pose a greater

16

likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation. Without allegations sufficient to make clear the grounds on which the plaintiff is entitled to relief, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

*Id.* (internal quotations, citations, and footnote omitted). If there are multiple defendants, the complaint should not simply lump them together; it must contain allegations of the specific acts of each particular defendant. *Id.* at 1250.

Bearing these legal standards in mind, Plaintiff's complaint does not adequately allege deprivation of a federal right. Plaintiff's only reference to a federal cause of action is found in Paragraph 14, which states: "That the acts contained herein and the result wherefrom constitute negligence, malicious prosecution, wrongful arrest and false imprisonment and violation of 42 U.S.C. § 1983." Besides the mere mention of this federal statute, Plaintiff does not elaborate in any way as to what actions by which persons allegedly violated her constitutional rights. In fact, Plaintiff does not even mention the Constitution, much less the particular constitutional provision allegedly violated. Although Plaintiff uses the terms "malicious prosecution," "wrongful arrest" and "false imprisonment" in Paragraph 14, these conclusory statements could also be interpreted as being claims under state, as opposed to federal, law.

In addition to failing to allege even the conclusory assertion of constitutional violations under § 1983, Plaintiff's complaint fails to meet the plausibility standard under *Iqbal*. All factual allegations preceding Paragraph 14 are couched in terms of negligence by the individual defendants. For example, Paragraph 11 states: "As a direct and proximate result of the negligence of Shawn Gore, Malin Parker and Paul Nelson, Plaintiff was arrested." The complaint alleges no other state

17

of mind other than negligence.  Even assuming Plaintiff has alleged Fourth and Fourteenth Amendment violations based on her references to malicious prosecution, wrongful arrest, and false imprisonment, more than a negligent state of mind is required to succeed on those constitutional claims.  *See Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (explaining, where suspect is arrested after issuance of warrant, officer is shielded from liability for Fourth Amendment violation unless he knowingly, or with reckless disregard for truth, includes false statements in affidavit or omits from affidavit information that, if included, would have vitiated probable cause); *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995) ("Allegations that a police officer acted negligently do not state a claim for a Fourteenth Amendment violation actionable under § 1983.").  Plaintiff's § 1983 claims against all Defendants must therefore be dismissed for failure to state a claim.

Plaintiff's complaint suffers the additional deficiency of lumping multiple defendants together without alleging specific acts, providing further grounds to support the dismissal of all § 1983 claims against Defendants Parker, Nelson, the City of Clovis, and the Clovis Police Department.  The complaint has only one non-conclusory fact pertaining to Mr. Nelson:  he was a computer forensic examiner with the Clovis Police Department who executed the search warrant upon Plaintiff's residence during which the 18 allegedly incriminating photographs were found.  Similarly, the complaint has only one non-conclusory fact as to Defendant Parker:  he was the Chief Deputy of the Roosevelt County Sheriff's Office who executed that same search warrant.  Plaintiff does not allege that the warrant or the manner of the execution of that search were unlawful.  Plaintiff offers no facts as to what Defendants Nelson or Parker did in the subsequent investigation to cause her rights to be violated.  The Complaint only alleges actions by Defendant Gore in this regard.  In multiple defendant cases, the plaintiff must make clear exactly who is alleged to have

18

done what to whom in order to provide each defendant with fair notice as to the basis of the claims against him or her. *Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009). Although Plaintiff alleges generally that Defendants Nelson and Parker caused the violation of her rights, she offers the mere conclusory allegation without any factual support. The Supreme Court in *Ashcroft v. Iqbal* unequivocally stated that such conclusory allegations are not sufficient to support a cause of action against a public official. *See Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949. For these additional reasons, Plaintiff's § 1983 claims against Defendants Parker and Nelson must be dismissed.

Plaintiff also does not assert any fact or legal conclusion to support her theory of liability on her § 1983 claims against the City of Clovis and its police department. Plaintiff does not even make a formulaic recitation of any of the necessary elements for a municipal liability claim against the City of Clovis (or against the Board in the First Amended Complaint). *Cf. Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49-50 (1st Cir. 2009) (concluding that complaint failed to show plausible entitlement to relief against supervisory defendants on supervisory liability/failure to train claim based merely on allegations that defendants, with deliberate indifference, failed to ensure that officers under their command followed procedures to respect rights of plaintiff). Plaintiff's § 1983 claims against the City of Clovis and the Clovis Police Department must therefore be dismissed for this additional reason.

### B. Based on the Undisputed Facts, Defendants are Entitled to Qualified Immunity on Plaintiff's § 1983 Claims, and thus, Dismissal of Plaintiff's § 1983 Claims will be With Prejudice

A dismissal under Rule 12(b)(6) is generally with prejudice, unless exceptional circumstances are present warranting a district court to invite a plaintiff to amend her complaint. *See United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 241-42 (1st Cir. 2004), *abrogation on other grounds recognized by United States ex rel. Gagne v. City of Worcester*,

565 F.3d 40 (1st Cir. 2009). This case does not present those exceptional circumstances because, based on the undisputed record before the Court, Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims, and thus, allowing Plaintiff to amend those claims would be futile.

Under Fed. R. Civ. P. 56(d), which was formerly Fed. R. Civ. P. 56(f), a court may deny a motion for summary judgment or may order a continuance to permit discovery if it appears from the affidavits of a party opposing summary judgment that the party lacks the facts essential to oppose the motion. *See Price v. Western Resources, Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). Summary judgment should be refused when the nonmoving party has not had the opportunity to discover information necessary to her case. *Id.* Discovery is not automatic under Rule 56(d); the party filing the affidavit must show how additional time will enable her to rebut the movant's allegations of no genuine issue of fact by detailing the evidence she expects to discover. *See Jarvis v. Nobel/Sysco Food Servs. Co.*, 985 F.2d 1419, 1422-23 (10th Cir. 1993). Unless dilatory or lacking in merit, a Rule 56(d) motion should be liberally treated. *See id.* at 1422.

A district court's discretion under Rule 56(d) is more limited, however, when a summary judgment motion is based on qualified immunity because insubstantial lawsuits against governmental officials should, if possible, be resolved prior to discovery and on summary judgment so as not to subvert the goals of *Harlow* and its progeny. *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990) (quoting *Jones v. City and County of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988)). "Accordingly, in response to a summary judgment motion based on qualified immunity, a plaintiff's [Rule 56(d)] affidavit must demonstrate '*how* discovery will enable them to rebut a defendant's showing of objective reasonableness" or, stated alternatively, demonstrate a "connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion.'" *Id.* (quoting *Jones*, 854 F.2d at 1211). A plaintiff will have to explain how

20

specific documents or depositions will aid in rebutting a defendant's showing of objective reasonableness – merely asserting that additional discovery is required to show a factual dispute is not enough.  *Id.* at 758-59.  Rule 56(d) "is not a license for a fishing expedition, especially when summary judgment is urged based on a claim of qualified immunity."  *Id.* at 759 (holding that court abused its discretion in deferring final ruling on defendants' qualified immunity claim pending discovery because plaintiff failed in her brief and affidavits to show how discovery would raise genuine fact issue on qualified immunity claim).

### 1.    Section 1983 False Arrest and Imprisonment

Here, Plaintiff has presumably attempted to assert § 1983 claims against all Defendants for both false arrest and imprisonment and malicious prosecution.  False imprisonment consists of detention without legal process, so a false imprisonment ends once the victim becomes held pursuant to legal process, when, for example, he is bound over by a magistrate or arraigned on charges.  *Wallace v. Kato*, 549 U.S. 384, 389 (2007).  "Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process."  *Id.* at 390.  Damages for a false arrest claim cover the time of detention up until issuance of process or arraignment, but not more.  *Id.*  From that point on, any damages recoverable must be based on a malicious prosecution claim, rather than the detention itself.  *Id.*  The issuance of an arrest warrant constitutes the institution of legal process for purposes of the tort of malicious prosecution.  *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

Plaintiff does not challenge the lawfulness of the issuance of the search warrant or the manner in which it was executed.  Instead, Plaintiff challenges her arrest and the length of her detention following her arrest.  She was arrested, however, on a warrant issued by a neutral judge,

which, according to the Tenth Circuit, constitutes the institution of legal process. *See id.* "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or . . . in 'objective good faith.'" *Messerschmidt v. Millender*, __ S.Ct. __, No. 10-704, 2012 WL 555206, *8 (Feb. 22, 2012) (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). The Supreme Court, however, has "recognized an exception allowing suit when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To defeat a qualified immunity defense on a false arrest claim where a judge has issued an arrest warrant, the plaintiff must show that the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. *See Malley*, 475 U.S. at 344-45; *Poolaw v. Mercantel*, 565 F.3d 721, 734 (10th Cir. 2009). "[T]he threshold for establishing this exception is a high one." *Messerschmidt*, __ S.Ct. __, 2012 WL 555206 at *8. Probable cause exists if the facts and circumstances are sufficient to demonstrate a substantial probability that a crime has been committed and that a specific individual committed the crime. *Wilkins*, 528 F.3d at 801. "A familial relationship to someone suspected of criminal activity, without more, does not constitute probable cause to search or arrest." *Poolaw*, 565 F.3d at 730.

This is not a case where no reasonably well-trained officer would have known that the Affidavit for Arrest Warrant failed to establish probable cause so as to render an officer's reliance on it unreasonable. The mere fact that Plaintiff was Mr. Gilpin's wife was not the sole basis for the issuance of the warrant. Rather, the Affidavit contained numerous facts particular to Ms. Gilpin. Plaintiff herself was depicted in 18 photographs with a female in sexual positions. The Affidavit for Arrest Warrant indicates that the 18 photographs were discovered in a computer with numerous

other photographs of children in sexual positions.  Mr. Gilpin had told a witness that he had computer equipment to encrypt his files to keep police from tracking him.  Although the other photographs did not involve Plaintiff, diminishing the weight to be given that evidence, the location of the 18 photographs in an encrypted computer with numerous other photographs of a criminal nature has some relevance in the totality of the circumstances analysis.  The Affidavit also indicates that Ms. Gilpin had participated in enticing a child into the apartment she shared with her husband, who at that time was a registered sex offender.  Although there is no information connecting that particular child to improper sexual activity, it, too, is relevant in the totality of the circumstances analysis, because it indicates that Ms. Gilpin has played an active role in initiating contact between a child and her husband.

Of course, the most critical evidence in the Affidavit for Arrest Warrant were the opinions of Defendant Parker and Ms. Burton, a nurse with extensive experience in sexual assault cases involving adults and children, that the 18 photographs depicted a female under 18 years of age.  Ms. Burton admitted that she could not speak to the truthfulness or authenticity of the photographs themselves, but was giving an opinion based on the best of her abilities and experience.  Reliance on these opinions is not objectively unreasonable.  In cases of child pornography, the identity of the victims will often be unknown, so officers in such cases will frequently have to rely on the opinions of professionals as to their best estimation of the age of the depicted persons based on anatomical features.  Based on all the facts contained in the Affidavit, it is not obvious in this case that no reasonably competent officer would have concluded that a warrant should issue.  Moreover, it is undisputed that Defendant Gore sought and obtained Assistant District Attorney Mowrer's approval of the warrant application before submitting it to the judge, providing further support that an officer could have reasonably believed the arrest warrant was supported by probable cause.  *Cf.*

*Messerschmidt*, __ S.Ct __, 2012 WL 555206 at *12 ("[T]he fact that the officers sought and obtained approval of the warrant application from a superior and a deputy district attorney before submitting it to the magistrate provides further support for the conclusion that an officer could reasonably have believed that the scope of the warrant was supported by probable cause.")  For all the foregoing reasons, Defendants are entitled to qualified immunity on Plaintiff's § 1983 false arrest claims.

## 2.      Section 1983 Malicious Prosecution

A § 1983 malicious prosecution claim includes the following elements:  (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) termination of the original action in favor of plaintiff; (3) lack of probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.  *See Pierce v. Gilchrist*, 359 F.3d 1279, 1291-97 (10th Cir. 2004).  With respect to the first element, a police officer typically does not proximately cause a malicious prosecution because the independent decisions of the prosecutor in bringing the charge and the court in issuing an indictment or warrant constitute superseding causes that break the chain of causation.  *Calvert v. Ediger*, 415 Fed. Appx. 80, 83 (10th Cir. Mar. 4, 2011) (unpublished opinion) (citing *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996)).  The probable cause requirement is also central to the claim "because not every arrest, prosecution, confinement, or conviction that turns out to have involved an innocent person should be actionable."  *Pierce*, 359 F.3d at 1294.

Absolute judicial immunity has been extended to non-judicial officers where their duties had an integral relationship with the judicial process.  *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000).  For this reason, officials charged with the duty of executing a facially valid court order are absolutely immune from civil liability arising out of a suit challenging conduct prescribed by that

order. *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir. 1990). Where the defendants themselves, however, obtain in bad faith the order under which they claim immunity, that order will not provide the same quasi-judicial immunity as an order in which the defendant played no part in procuring. *Moss v. Kopp*, 559 F.3d 1155, 1163 n.10 (10th Cir. 2009).

Consequently, an officer is not shielded from liability for a Fourth Amendment violation if, in support of an arrest warrant, he knowingly, or with reckless disregard for the truth, includes false statements in the affidavit or omits from the affidavit information that, if included, would have vitiated probable cause. *Taylor*, 82 F.3d at 1562. Moreover, an officer who causes others to file fraudulent charges against an innocent civilian cannot insulate himself and escape liability under § 1983. *See Pierce*, 359 F.3d at 1292-93, 1296 (holding that forensic chemist who allegedly lied and distorted evidence to convince prosecuting authorities to press charges cannot hide behind fact that she neither initiated nor filed charges against plaintiff). An officer may thus also be liable for malicious prosecution for concealing or misrepresenting material facts to the prosecutor, whose judgment was thereby influenced by the misstatements, *see Calvert*, 415 Fed. Appx. at 83 (citing *Pierce*, 359 F.3d at 1292-93), and for giving false testimony at a grand jury proceeding or at a pretrial proceeding, if the officer is the complaining witness who initiated, at least in part, the prosecution and that testimony is relevant to the manner in which he initiated or perpetuated the prosecution of the plaintiff, *see Anthony v. Baker*, 955 F.2d 1395, 1399-1401 (10th Cir. 1992). As the Tenth Circuit explained:

> [A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial-none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision. . . .
>
> *If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors*

> *or grand jurors, or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded.*

*Pierce*, 359 F.3d at 1292 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988)) (emphasis in original).[5]

Nor is the existence of probable cause at the time of the arrest a complete defense to malicious prosecution, because even when probable cause is present at the time of the arrest, evidence may later surface that eliminates probable cause.  *Pierce*, 359 F.3d at 1295-96 (rejecting argument that, if probable cause existed for arrest, Fourth Amendment is not violated if official falsifies or withholds evidence that, if accurately reported, would vitiate probable cause and lead to immediate release and exoneration).  Where an official, after an initial finding of probable cause, learns of evidence indicating an arrestee's innocence, he may be liable if he fails to apprise the prosecutor or judicial officer of known exculpatory information.  *See Brady v. Dill*, 187 F.3d 104, 114 (1st Cir. 1999).  For § 1983 liability to attach, the official's falsification or omission of evidence must have been knowing or reckless and resulted in continued confinement and prosecution.  *See Pierce*, 359 F.3d at 1299-1300.  *See also Gray v. Cuyahoga County Sheriff's Dep't*, 150 F.3d 579, 582-84 (6th Cir.1998) (concluding that officers, if acting with deliberate indifference, may be liable for due process violation where they detained plaintiff for 41 days despite their possession of photograph of wanted person "that bore virtually no resemblance" to plaintiff).

---

[5]*See also Taylor*, 82 F.3d at 1563-64 (explaining that, although an indictment could break the chain of causation in holding an investigating officer liable for a malicious prosecution claim, an officer could be found liable if he made false or misleading statements following the suspect's arrest, or if he caused false or perjured testimony to be presented to court at preliminary hearing, or if he exerted pressure or influence on or made knowing misstatements to prosecutor); *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir.1994) (holding that, although a grand jury indictment gives rise to a presumption of probable cause for purposes of a malicious prosecution claim, a showing of "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith" can overcome this presumption).

The Constitution, however, does not impose on a police officer the duty to function as the decisionmaker in order to determine the dissipation *vel non* of probable cause or the actual innocence of a person in custody. *See Brady*, 187 F.3d at 114-15. Ordinarily, it is sufficient for the police officer to bring the relevant information to the attention of the prosecutor in a timely fashion. *Id.* The First Circuit succinctly explained the reasons for the separation of duties:

> Regardless of the merits of the defense, our legal system simply does not rely on police officers to determine its bona fides, even though they may have information bearing on that ultimate question and even though they may harbor strong and informed opinions one way or the other. To the contrary, once probable cause has been established, a warrant issued, and an arrest perfected, the ordinary course is for the prosecutor to decide whether to go forward, and if he elects to proceed, for the judicial branch to make the final ascertainment of guilt or innocence-not for the police to take matters into their own hands.
>
> One reason for this allocation of decisionmaking responsibility is that the prosecutor, the judge, and the jury are institutionally better equipped to make such determinations. The prosecutor, as the official responsible for proving guilt, has the capacity-and the armamentarium-to assemble and assess all the existing evidence and to evaluate whether there is proof enough to press charges. The judge, as a neutral and detached factfinder, benefits from the formal mechanisms of introduction and consideration of proof (not the least of which is cross-examination) that give his ultimate determination the degree of reliability that our system of justice deems essential to ensure fairness. The jury, similarly, is positioned to make informed judgments as to guilt or innocence upon receipt of tested proof and legal instructions.

*Id.* at 112. *See also Romero*, 45 F.3d at 1481 ("In light of the [Supreme] Court's recognition that the judicial system represents the proper forum in which to determine the innocence of an arrestee, Defendants' refusal to release Plaintiff when he maintained his innocence does not exhibit deliberate or reckless intent to falsely imprison him.")

"If evidence is falsified or withheld, the probable cause determination is made by considering whether, excluding the falsified inculpatory evidence or including the withheld exculpatory evidence, probable cause existed to prosecute." *McCarty v. Gilchrist*, 646 F.3d 1281, 1286 (10th Cir. 2011).

27

a.      **The Roosevelt County Defendants**

The Roosevelt County Defendants argue that they are entitled to qualified immunity because (i) independent, neutral judges issued the search warrant for Plaintiff's residence and the arrest warrant for Plaintiff's arrest; (ii) Plaintiff does not allege that either Defendant Gore or Parker made any false statements or omissions to the judges; (iii) the undisputed evidence shows that Defendant Gore disclosed to the prosecutor the exculpatory information learned from Plaintiff after her arrest; and (iv) Defendants had no ability to control the course of the criminal proceedings once the prosecutor assumed control following Plaintiff's arrest.  Plaintiff responds that Defendant Gore presented his Affidavit for Arrest Warrant to the court without probable cause, following a negligent investigation, and that he misled the judge by including Mr. Gilpin's alleged crimes as a means to make the judge believe that probable cause existed as to Mrs. Gilpin's alleged commission of a crime.  Plaintiff also contends that Defendant Gore, upon interviewing her, learned of the alleged victim's identity and city of residence and did nothing more than an unfruitful internet search to find her, resulting in her continued incarceration for another five months.  Plaintiff argues that she is entitled to additional discovery under Rule 56(d) to contest Defendant Gore's statements in his affidavit prepared for this litigation that he acted properly and advised all individuals as to all facts.

Regarding her initial arrest, because Plaintiff was arrested pursuant to a warrant, a mere error in judgment by the officers in their probable cause assessment is not enough for liability to attach on a malicious prosecution claim.  Instead, in order to make a § 1983 malicious prosecution claim against Defendants Gore and Parker regarding an arrest following a warrant, Plaintiff must show that each Defendant knowingly, or with reckless disregard for the truth, included false statements in the affidavit or omitted from the affidavit information that, if included, would have vitiated probable cause.

Plaintiff argues that Defendants misled the judge by including explicit detail regarding Mr. Gilpin's crimes. Although the Affidavit for Arrest Warrant did contain extensive information on Mr. Gilpin's crimes, that information was relevant to the probable cause assessment regarding Ms. Gilpin. Defendants obtained the photographic evidence against Ms. Gilpin as a result of their investigation of Mr. Gilpin. Explaining the events leading up to the execution of the search warrant was therefore relevant to the judge's assessment of the evidence discovered. Although such evidence might ultimately be inadmissible in a trial as unduly prejudicial, a judge has the experience and tools to assess the weight to give such evidence, and thus, its mere inclusion in the affidavit does not constitute misleading and false evidence under *Taylor*.

Furthermore, as to Defendant Parker, Plaintiff has no evidence, and has not averred that she expects to find any evidence in discovery, that he supplied any false statements or omissions in the Affidavit for Arrest Warrant. The undisputed evidence shows that Defendant Gore, not Defendant Parker, drafted the Affidavit. Defendant Gore averred in the Affidavit that Defendant Parker informed him that he was present during Ms. Burton's review of the 18 photographs and indicated that it was their opinion that the photographs included an underage victim. Although the opinion of Ms. Burton and Defendant Parker concerning the victim's age ultimately turned out to be wrong, there is no evidence that, at the time he offered the opinion, either he or Defendant Gore knew the opinion was wrong or was made with reckless disregard for the truth. Rather, Defendants' utilization of a trained Sexual Assault Nurse Examiner indicates that they were attempting to ascertain the age of the alleged victim in a reasonable way.

Additionally, Defendant Gore did not interview Plaintiff until *after* her arrest, and thus, the information he learned from that interview could not have vitiated the probable cause for her arrest. Plaintiff has not shown that she expects to find through discovery that Defendants made any other

false statement or material omission in the Affidavit for Arrest Warrant.  Plaintiff therefore cannot succeed on a § 1983 claim against Defendants Gore and Parker resulting from her initial arrest.

In addition, Plaintiff argues that Defendants violated her rights by continuing to prosecute and detain her even after, in her post-arrest interview, she identified the alleged victim in the 18 photographs as Ms. Bundy who was of legal age at the time the photographs were taken.  In order to succeed on a claim of an unreasonable post-arrest investigation in violation of Fourteenth Amendment rights, a plaintiff must assert facts that, at a minimum, demonstrate the defendants acted with deliberate or reckless intent.  *Romero*, 45 F.3d at 1478.  As discussed above, Plaintiff's entire case has been alleged in terms of negligence, and a  negligent investigation is not enough to establish a § 1983 claim.  *Cf. id.* at 1481 (holding that facts alleged by plaintiff concerning manner in which officers conducted post-arrest investigation of plaintiff's alibi witnesses and murder of victim did not exceed negligence, and thus were insufficient to establish § 1983 action for violation of Fourteenth Amendment rights).

In *Romero*, the Tenth Circuit acknowledged that the "probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention."  *Romero*, 45 F.3d at 1476-77.  Significantly, the Tenth Circuit in *Romero* rejected the plaintiff's argument that the officer's failure to investigate the plaintiff's purported alibi witnesses in itself negated probable cause and amounted to a constitutional violation where the plaintiff had failed to show that the officer's initial probable cause determination was itself unreasonable.  *See id.* at 1477-78.  The Tenth Circuit cited with approval cases holding that a police officer, having once determined that there is probable cause to arrest, is not required to investigate every claim of innocence.  *See id.* at 1477-78 & n.3.  Consequently, especially in this

30

case where a neutral judge made the initial probable cause to arrest determination, it is not clearly established that Defendant Gore had any constitutional duty to investigate Plaintiff's post-arrest claim of innocence.  *Cf. Scull v. New Mexico*, 236 F.3d 588, 598 (10th Cir. 2000) (noting that officers had no underlying constitutional duty to investigate plaintiff's claim that he should be released within time frame where plaintiff was being held pursuant to warrant); *Romero*, 45 F.3d at 1479 ("The essence of Plaintiff's argument, however, is that the police assumed a duty to conduct a post-arrest investigation which they performed poorly. Although Defendants may not have conducted their post-arrest investigation as efficiently as possible, their conduct as alleged by Plaintiff simply does not exceed negligence. Plaintiff has therefore failed to assert a constitutional violation at all.").

Moreover, even assuming Plaintiff's post-arrest statements were sufficiently exculpatory to vitiate probable cause, if Defendant Gore had any constitutional duty at all upon learning of the exculpatory information, it was to apprise the prosecutor or judicial officer of the known exculpatory information.  *See Brady*, 187 F.3d at 114.  Here, the undisputed evidence contained in both Defendant Gore's and Deputy District Attorney Mowrer's affidavits is that Defendant Gore told Ms. Mowrer on the same day as the interview that Plaintiff identified Constance Bundy from Toledo, Ohio, who was over the age of 18 years at the time of the consensual acts depicted.  Both Defendant Gore's and Ms. Mowrer's sworn statements are consistent with one another.  Plaintiff nonetheless argues under Rule 56(d) that she needs discovery in order to contest the evidence that Defendant Gore did, indeed, properly advise all individuals as to all facts.  In essence, Plaintiff's argument is that she hopes Defendant Gore and Ms. Mowrer will impeach themselves in their depositions. Plaintiff, however, offers no reasonable grounds to support this hope, and thus, Plaintiff's Rule 56(d) request amounts to nothing more than a fishing expedition that will be denied.

31

With respect to Defendant Parker, there is no evidence that he was present during the interview with Ms. Bundy or that he had any exculpatory information at any time that he withheld from the prosecutor.  Plaintiff does not argue under Rule 56(d) that she expects to discover any information particular to Defendant Parker to establish his liability.

Accordingly, based on the undisputed evidence, both Defendant Gore and Defendant Parker are entitled to qualified immunity on Plaintiff's malicious prosecution claims.

### b.      The Clovis Defendants

The Clovis Defendants argue that Paul Nelson is entitled to qualified immunity because he was not a certified law enforcement officer, and that he was acting solely in his capacity as a Computer Information Technologist when the search warrant was executed at Plaintiff's home. They assert that Defendant Nelson did not have the authority to arrest Plaintiff or to determine whether probable cause existed to support her arrest, and that he was not involved in her subsequent arrest or the decision to hold her in custody.  Finally, the Clovis Defendants assert that the Clovis Police Department and the City of Clovis should be dismissed because Plaintiff fails to allege any facts to support a municipal liability claim against them, and because, they cannot be liable if Mr. Nelson committed no constitutional violation.

In response, Plaintiff requests relief under Rule 56(d). Plaintiff contends that, during the execution of the search warrant on Plaintiff's house, Defendant Nelson was identified as a deputy of the Roosevelt County Sheriff's Department.  Plaintiff also alleges that the City of Clovis has indicated that it routinely loans out Mr. Nelson's services to various law enforcement agencies, including Roosevelt County Sheriff's Department, "for investigations similar to the raid that forms the basis of the case at hand." (Pl.'s Resp. (Doc. 17) ¶ 7.) Plaintiff argues that she needs discovery, including at least Defendant Nelson's deposition, "to determine what, exactly, his role in any

32

investigation was, what the practices of Defendant City were in loaning his services out to law enforcement agencies, and what information he had relative to the ages of individuals in photographs at issue in this case." (*Id.* ¶ 8.) Plaintiff states that she expects to discover that Defendant Nelson did more than just technical support, that he advised other officers that Plaintiff should be prosecuted, and that the City of Clovis allows Defendant Nelson to be used to violate the rights of citizens without making inquiry into the manner in which he is used. (*See id.* ¶ 9.)

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). An official who causes a citizen to be deprived of her constitutional rights can be held liable if the official sets in motion a series of events that he or she knew or reasonably should have known would cause others to violate a citizen's constitutional rights. *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990) (quoting *Conner v. Reinhard*, 847 F.2d 384, 396-97 (7th Cir. 1988)).

Even if Plaintiff's expected discovery revelations prove true, the Clovis Defendants are entitled to summary judgment. First, even assuming Mr. Nelson acted in more of an investigative capacity during the execution of the search warrant, that does not establish a constitutional violation, as Plaintiff has not alleged that the search warrant was invalid or that the manner of execution of the search warrant exceeded constitutional bounds. Second, if discovery were to reveal that Mr. Nelson examined the 18 photographs and advised and directed Defendants Gore and/or Parker to arrest Plaintiff, Plaintiff could still not establish that Defendant Nelson is liable for malicious prosecution. As discussed above, Plaintiff cannot show that either Defendant Gore or Defendant Parker violated Plaintiff's constitutional rights, and thus, Defendant Nelson could not have caused a constitutional violation.

Plaintiff argues that Defendant Nelson is liable because the lack of probable cause to support

33

her arrest clearly violates the Fourth Amendment.  (*See* Pl.'s Reply (Doc. 27) at 1.)  Plaintiff, however, relies on cases in which officers arrested a suspect without a warrant.[6]  In contrast, here it is undisputed that Defendant Gore presented an affidavit to a neutral judge who authorized the arrest warrant.  Plaintiff's claims against Defendant Nelson are based on allegations that he gave his opinion to the officers as to the age of the female in the photograph.  Those actions alone are not enough to establish liability.  There is no allegation or suggestion that Defendant Nelson fabricated any evidence or withheld any exculpatory information from the judge, or that he caused Defendant Gore to falsify or omit material evidence, as is required to establish a § 1983 claim where a judge has issued an arrest warrant.  Nor does Plaintiff argue that she expects to find such evidence in discovery.  Moreover, it is undisputed that Plaintiff did not provide Defendant Gore with exculpatory information concerning the age and identity of Ms. Bundy until *after* her arrest.  Plaintiff has not asserted that she expects to discover information that Defendant Nelson was involved in the process at any point after Ms. Bundy provided the purported exculpatory information.  Defendant Nelson is therefore entitled to qualified immunity and summary judgment on Plaintiff's § 1983 claims for false arrest and malicious prosecution.

Because Plaintiff has not shown that Defendant Nelson violated any of her constitutional rights, the City of Clovis and Clovis Police Department are entitled to summary judgment for that reason alone.  Moreover, Plaintiff has not shown how the City of Clovis or its police department could be liable based on a municipal liability theory.  Municipalities cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory for merely employing a tortfeasor.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  Municipalities, instead, are subject

---

[6]*Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984) (warrantless arrest); *Street v. Surdyka*, 492 F.2d 368 (4th Cir. 1974) (same).

to § 1983 liability only when their official policies or customs cause a plaintiff's injuries. *Id*. at 694; *Johnson v. Johnson*, 466 F.3d 1213, 1215 (10th Cir. 2006). Discovery on the City of Clovis's requirements before allowing its computer technicians to participate in the executions of search warrants would not establish a constitutional violation. Again, Plaintiff has not challenged the execution of the search warrant during which Mr. Nelson's services were used. Plaintiff has not explained how merely loaning the services of computer technicians to law enforcement to secure computer evidence would establish a policy, practice, or custom of constitutional violations of citizens. Accordingly, the Court will grant the Clovis Defendants' motion for summary judgment as to all Plaintiff's § 1983 claims against them.

### C.     The Clovis Defendants are Entitled to Summary Judgment on Plaintiff's State Law Claims but the Court Will Not Address the Merits of Plaintiff's State Law Claims as to the Roosevelt County Defendants

The Clovis Defendants argue in their motion for summary judgment that they are entitled to summary judgment on Plaintiff's state law claims because Defendant Nelson is not a law enforcement officer and there are no waivers of immunity that would result in potential liability on the part of either Defendant Nelson or the City of Clovis and its police department under the NMTCA. Plaintiff has not argued that any particular provision of the NMTCA waives the Clovis Defendants' immunity from suit. Plaintiff does, however, contend that she needs discovery into whether Defendant Nelson was acting as a law enforcement officer on the night in question, based on her contention that "Defendant Nelson was identified to Mrs. Gilpin during the initial raid on her home as a deputy with the Roosevelt County Sheriff's Office." (*See* Pl.'s Mot. to Defer, Aff. of John L. Collins (Doc. 17-1) ¶ 4.) Presumably, then, Plaintiff is contending that the law enforcement exception to immunity applies.

The NMTCA provides the exclusive remedy for a tort action brought against a governmental

35

entity or public employee.  *See* NMSA 1978, § 41-4-17.  A "public employee" is defined as "an

officer, employee or servant of a governmental entity."  N.M.S.A. 1978, § 41-4-3(F) (2009).  The

NMTCA retains governmental immunity except for eight enumerated classes of activity.  *See Cole*

*v. City of Las Cruces*, 99 N.M. 302, 303 (1983); NMSA 1978, § 41-4-4 (2001).  Section 41-4-12 of

the NMTCA waives liability for certain torts committed by law enforcement officers.  NMSA 1978,

§ 41-4-12 (1976).

> Section 41-4-3(D) defines a "law enforcement officer" as
>
> a full-time salaried public employee of a governmental entity, or a certified part-time
> salaried police officer employed by a governmental entity, whose principal duties
> under law are to hold in custody any person accused of a criminal offense, to
> maintain public order or to make arrests for crimes, or members of the national guard
> when called to active duty by the governor.

NMSA 1978, § 41-4-3(D) (2009).  Only those persons whose principal duties include those of a

direct law enforcement nature meet this definition.  *See Anchondo v. Corrections Dep't*, 100 N.M.

108, 109-10 (1983).  A court must look at the character of the principal duties involved, those duties

to which employees devote the majority of their time.  *See id.*

In this case, Defendant Nelson is undisputedly a public employee and the City of Clovis is

a governmental entity within the meaning of the NMTCA, and thus, any tort claim asserted against

them must be considered in light of the limitations of the NMTCA.  *See* NMSA 1978, §§ 41-4-3(B),

(D), & (F).  Plaintiff, in her Complaint, refers to Defendant Nelson as "a computer forensic examiner

with the Clovis Police Department."  (Compl. ¶ 2.)  There are no other allegations in the Complaint

indicating that Defendant Nelson's duties include holding persons in custody, making arrests, or

maintaining the public order.  Plaintiff's state law claims against Defendant Nelson must be

dismissed based on the failure to allege any facts in the complaint to show that immunity has been

waived under the NMTCA.  *See Dunn v. McFeeley*, 1999-NMCA-084, ¶ 24, 127 N.M. 513

36

(affirming dismissal of state law claims against medical investigator and crime laboratory technician under NMTCA because complaint did not allege any duties to show that they were law enforcement officers).  Because Defendant Nelson is immune from suit, the City of Clovis is likewise immune from suit for those claims and entitled to dismissal of the state law claims against it.  *See Weinstein v. City of Santa Fe ex rel. Santa Fe*, 121 N.M. 646, 651 (1996) (governmental entity could be held vicariously liable for alleged torts committed by officers *for which immunity has been waived*).

The dismissal of the state law claims against the Clovis Defendants will be with prejudice based on futility of amendment.  Defendant Nelson submitted an affidavit stating that he is a Computer Information Technologist for the City of Clovis, that he has never been issued a law enforcement commission as an officer for the City of Clovis, that he is not a certified law enforcement officer, and that his direct supervisor is the City Manager for the City of Clovis. (Def.'s Mem. Br., Ex. A (Doc. 13-1) ¶¶ 1-2.)  He further asserts that, from time to time, he is asked to render technical computer assistance to law enforcement agencies in Curry and Roosevelt Counties, and in that capacity, he was present during the execution of the search warrant of Plaintiff's home.  (*Id.*, Ex. A (Doc. 13-1) ¶ 3-4.)  The only ground Plaintiff offers to support her argument that she is entitled to discovery under Rule 56(d) is that Defendant Nelson was identified to Ms. Gilpin during the initial raid on her home as a deputy with the Roosevelt County Sheriff's Office.  The mere fact that some unnamed person identified Defendant Nelson as a deputy is not sufficient to entitle Plaintiff to discovery.  "In interpreting the Tort Claims Act [the New Mexico] appellate courts have repeatedly found that a connection to law enforcement activity, even being a member of the law-enforcement team, is insufficient by itself to make one a law enforcement officer; the person's duties must directly impact public order."  *Dunn*, 1999-NMCA-084, ¶ 25. Plaintiff has not shown how or why she expects additional discovery to show that Defendant

37

Nelson's duties impact public order.  The Court will therefore deny Plaintiff's request for Rule 56(d) discovery as to the Clovis Defendants and will dismiss them from the case with prejudice.

With respect to the Roosevelt County Defendants, they request dismissal of all claims in their motion for summary judgment, but they do not set forth any specific argument as to why they are entitled to dismissal or summary judgment as to the state law claims.  Instead, their motion is based on the qualified immunity defense, which pertains to the federal claims.  The Court is reluctant to address the merits of the state law claims without argument as to the particular grounds warranting dismissal.  The Court will therefore deny the Roosevelt County Defendants' request for dismissal of the state law claims, which will remain in the case.  This ruling does not preclude them from filing any future motions seeking dismissal or judgment on the state law claims with particularity.

### D.     Leave to Amend to Add the Board of County Commissioners of Roosevelt County will be Granted in Part

Plaintiff erroneously sued the Roosevelt County Sheriff's Office instead of the correct entity, the Board of County Commissioners of Roosevelt County.  She now seeks to name the proper entity for suit.  The Court will allow Plaintiff leave to amend her complaint to add the Board, but only as to the state law claims asserted in her proposed First Amended Complaint.  For the reasons explained herein, Plaintiff cannot establish a viable § 1983 claim against the Board, so amending the complaint to add such claims would be futile.  Therefore, her request to amend her complaint to assert § 1983 claims against the Board will be denied.

**IT IS THEREFORE ORDERED** that

1.       The Clovis Defendants' Motion for Summary Judgment (**Doc. 12**) is **GRANTED**;

38

2.      Plaintiff's Motion to Defer Consideration of or Deny Defendants City of Clovis' and Nelson's Motion for Summary Judgment (**Doc. 17**) is **DENIED**;

3.      Plaintiff's Motion to Amend Complaint (**Doc. 26**) is **GRANTED in part and DENIED in part** as follows:

     a.      Plaintiff is **GRANTED** leave to amend her complaint to add the state law claims asserted in her proposed First Amended Complaint against the Board of County Commissioners of Roosevelt County, but

     b.      Plaintiff is **DENIED** leave to amend her complaint to assert § 1983 claims against the Board of County Commissioners of Roosevelt County;

4.      The Roosevelt County Defendants' Motion for Summary Judgment (Qualified Immunity) (**Doc. 28**) is **GRANTED in part and DENIED in part** as follows:

     a.      The Roosevelt County Defendants' request for dismissal with prejudice as to all § 1983 claims asserted against them is **GRANTED**, but

     b.      The Roosevelt County Defendants' request for dismissal with prejudice as to the state law claims asserted against them is **DENIED**;

5.      Defendants Nelson, the City of Clovis, and the Clovis Police Department are hereby **DISMISSED WITH PREJUDICE** from the case.

_____
SENIOR UNITED STATES DISTRICT JUDGE