THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOY GILPIN,

      Plaintiff,

v.

                                                    No. Civ. 11-336 LH/LAM

BOARD OF COUNTY COMMISSIONERS
OF ROOSEVELT COUNTY, SHAWN D. GORE,
and MALIN K. PARKER,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

On April 5, 2012, Defendants Board of County Commissioners of Roosevelt County, Shawn Gore, and Malin Parker ("the Roosevelt County Defendants" or "Defendants") filed a Second Motion for Summary Judgment (Doc. 42), seeking dismissal of all remaining claims in this case. The Court, having considered the motion, briefs, evidence, relevant law, and otherwise being fully advised, concludes that the Roosevelt County Defendants' motion for summary judgment should be granted and all remaining claims in the case should be dismissed.

**I.    BACKGROUND**

On February 27, 2012, this Court entered a Memorandum Opinion and Order (Doc. 39) granting in part the Roosevelt County Defendants' initial motion for summary judgment. The Court granted the Roosevelt County Defendants summary judgment on Plaintiff's claims brought under 42 U.S.C. § 1983, but denied their request for summary judgment on Plaintiff's state law claims because they had not sufficiently briefed the state law issues. The Court noted that its

1

ruling did not preclude the Roosevelt County Defendants from filing any future motions related to the state law claims. In the February 27, 2012 Memorandum Opinion and Order, the Court also granted the motion for summary judgment filed by Defendant City of Clovis, the Clovis Police Department, and Paul Nelson (collectively, "the Clovis Defendants"), dismissing with prejudice the Clovis Defendants from the case.

The Roosevelt County Defendants now move for summary judgment on all remaining state law claims against them: negligence, malicious prosecution, wrongful arrest, and false imprisonment. The Roosevelt County Defendants adopt and incorporate by reference the facts set forth in their initial motion for summary judgment (Doc. 28) and in the Court's February 27, 2012 Memorandum Opinion and Order (Doc. 39). Plaintiff does not argue against the Court incorporating the facts set forth in the "Factual Background" section of its previous Memorandum Opinion and Order. Plaintiff, however, added five enumerated facts in responding to the current motion, which all involve the credibility of former defendant Paul Nelson.

Plaintiff's facts are based on the Affidavit of Phil Caroland, a law enforcement officer employed by the Curry County Sheriff's Department who has been acquainted with Paul Nelson and has worked with him on computer and cell phone forensic evaluations since 2008. (*See* Aff. of Phil Caroland (Doc. 47) ¶¶ 2-3.) In Officer Caroland's opinion, Paul Nelson is unreliable and dishonest, and has a reputation in the law enforcement community for such unreliability. (*Id.* ¶¶ 4, 15.) Officer Caroland bases his opinion on problems that came to light in 2010 while Mr. Nelson was assisting his agency. (*See id.* ¶ 14.) In one instance, Officer Caroland delivered to Mr. Nelson a cellular telephone for analysis, and after great delay on his part and after repeated requests by Officer Caroland for the report, Mr. Nelson indicated that he could not access the

phone because it was password protected.  (*Id.* ¶ 8.)  The phone, however, was not, in fact, password protected.  (*Id.* ¶ 9.)  Mr. Nelson also lied to Officer Caroland on other occasions regarding investigations.  (*Id.* ¶ 11.)  Mr. Nelson was subsequently removed from the Attorney General's Internet Crimes Against Children Task Force.  (*See id.* ¶ 5.)

Defendants dispute the fact that Mr. Nelson has a reputation for dishonesty among law enforcement officers in Eastern New Mexico, relying on Defendant Gore's Affidavit that states the contrary.  (*See* Defs.' Reply, Ex. D (Doc. 45-2) ("Second Affidavit of Shawn Gore") ¶¶ 7, 10.) According to Defendant Gore, he disagrees that Mr. Nelson is not trusted and is not honest, he is not aware that Mr. Nelson's commission with the Sheriff's Office had been pulled as a result of his dishonesty, he knows that such was not the case with the Roosevelt County Sheriff's Office, and he has no personal knowledge whatsoever that Mr. Nelson has lied a number of times about forensic analyses on computers or cellular phones or failed to store computer evidence securely. (*See id.* ¶¶ 7-10.)

Even assuming as true that Mr. Nelson does have a reputation for unreliability in the law enforcement community, the facts concerning his reputation and the basis for it are not relevant to the current case, for the reasons discussed herein.  The Court will therefore incorporate and rely on the facts set forth in its February 27, 2012 Memorandum Opinion and Order (Doc. 39) in resolving the current motion for summary judgment, and for brevity, will not repeat them here.

**II.   STANDARD**

Summary judgment is appropriate only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

3

of law.'"  *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).  "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party."  *Id.* (internal quotations omitted).  Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment.  *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists.  *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial.  *Id.*  The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.

## III.   ANALYSIS

The New Mexico Tort Claims Act ("NMTCA") provides the exclusive remedy for a state tort action brought against a governmental entity or public employee.  *See* N.M. Stat. Ann. §41-4-17 ("The Tort Claims Act . . . shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived . . . .").  The NMTCA retains governmental immunity for governmental entities and any public employees acting within the scope of their duties, except for eight enumerated classes of activity, including certain unlawful

4

acts by law enforcement officers. *See id.* §41-4-4 (granting immunity from tort liability for "governmental entity and any public employee while acting within the scope of duty . . . except as waived by . . . Sections 41-4-5 through 41-4-12"); *Cole v. City of Las Cruces*, 99 N.M. 302, 303 (1983). As to torts committed by law enforcement officers, the NMTCA waives immunity in the following circumstances:

> for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12. To state a tort claim under the waiver of immunity set forth in Section 41-4-12, a plaintiff must show "that the defendants were law enforcement officers acting within the scope of their duties, and that the plaintiff's injuries arose out of either a tort enumerated in this section or a deprivation of a right secured by law." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, 121 N.M. 646, 649.

### A.     Wrongful Arrest and False Imprisonment

"The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so." *Santillo v. N.M. Dept. of Pub. Safety*, 2007-NMCA-159, ¶ 12, 143 N.M. 84. The torts of false arrest and false imprisonment are similar in that a false arrest is merely one way of committing false imprisonment. *Id.* Notably, "[a]n officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." *Id.*

Neither Defendant Gore nor Parker were present when Ms. Gilpin was arrested.

5

Defendant Gore, however, drafted the Affidavit for Arrest Warrant for Ms. Gilpin's arrest.  The evidence nonetheless shows that neither Defendant Gore nor Defendant Parker knew that they did not have lawful authority to secure or execute the warrant.  The prosecutor reviewed the Affidavit and approved it.  A judge for the Magistrate Court of Roosevelt County found probable cause and signed the Arrest Warrant.  As more thoroughly explained in this Court's prior Memorandum Opinion and Order (Doc. 39), "[b]ased on all the facts contained in the Affidavit, it is not obvious in this case that no reasonably competent officer would have concluded that a warrant should issue."  (Mem. Op. and Order (Doc. 39) at 23.)  This Court has already determined that probable cause existed to arrest Ms. Gilpin at the time she was arrested and adopts those same reasons here.  (*See id.* at 28-30.)

Plaintiff nonetheless argues that Defendants did not provide the magistrate judge with information concerning the unreliability and dishonesty of Mr. Nelson, and that if they had, the magistrate would likely not have found probable cause.  Ms. Gilpin was arrested on December 2, 2008.  As Officer Caroland attests, however, the facts giving rise to Mr. Nelson's reputation for unreliability did not occur until far later, sometime in 2010.  There is therefore no evidence that either Defendant Gore or Defendant Parker knew or recklessly disregarded information concerning Mr. Nelson's credibility and omitted such information from the affidavit, as that information was not available at the time the warrant was issued.  Furthermore, inclusion of Mr. Nelson's credibility would not have vitiated probable cause because there is no question about the existence of the 18 photographs depicting Ms. Gilpin in sexual positions with a young female, and the Affidavit relied on the opinion of Tawnya Burton, a Registered Nurse and Sexual Assault Nurse Examiner, that the photographs depicted an underage victim.  Mr. Nelson's credibility is

6

therefore of limited relevance.  Finally, of even less relevance is Plaintiff's argument that Defendants misrepresented that Mr. Nelson worked for the Clovis Police Department, when in fact he worked for the City of Clovis.   Had the correct information been included, it would have had no bearing on the magistrate's determination of probable cause.

For all the foregoing reasons, Defendants are entitled to summary judgment on Plaintiff's claim for false arrest and imprisonment.

### B.  Malicious Abuse of Process

Under New Mexico law, the claims of abuse of process and malicious prosecution have been combined to make a combined tort of malicious abuse of process. *See Durham v. Guest*, 2009-NMSC-007, ¶ 25, 145 N.M. 694. The elements of this combined tort are: (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages.  *Id. ¶* 29.  Misuse of process can be shown in one of two ways:  (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment.  *Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, ¶12, 142 N.M. 150. "[A]n overt misuse of process, such as a lack of probable cause . . . may support an inference of an improper purpose."  *DeVaney v. Thriftway Mktg. Corp.*, 1998-NMSC-001, ¶ 30, 124 N.M. 512, *abrogated on other grounds by Fleetwood Retail*, 2007-NMSC-047, 142 N.M. 150, *and overruled on other grounds by Durham*, 2009-NMSC-007, 145 N.M. 694.   Probable cause, in the context of a malicious abuse of process claim, is "the reasonable belief, founded on known facts established after a reasonable pre-filing investigation, that a claim can be established to the satisfaction of a court or jury."   *Id. ¶* 22 (internal citations and footnote omitted).

This Court has concluded that probable cause existed at the time Ms. Gilpin was arrested on the warrant. Defendants Gore and Parker therefore did not misuse judicial process in securing an arrest warrant for Plaintiff, and cannot be held liable for Plaintiff's arrest.

After Ms. Gilpin was arrested, however, in an interview with Defendant Gore, she told him that the female depicted in the 18 photographs was Constance Bundy who was over 18 years of age at the time the photographs were taken. As an initial matter, an arrestee's self-serving declarations of innocence are not of themselves necessarily sufficient to obviate probable cause. *Cf. Romero v. Fay*, 45 F.3d 1472, 1477-78 (10th Cir. 1995) (rejecting plaintiff's argument that the officer's failure to investigate plaintiff's purported alibi witnesses in itself negated probable cause and amounted to a constitutional violation where plaintiff had failed to show that officer's initial probable cause determination was itself unreasonable). Even more importantly, here it is undisputed that Defendant Gore told the prosecutor on the same day as the interview that Plaintiff identified Ms. Bundy from Toledo, Ohio, as the person in the photographs who was over 18 years at the time of the consensual acts depicted therein. Defendant Gore therefore did not withhold any potentially exculpatory evidence from the prosecutor. Following Ms. Gilpin's initial appearance, the District Attorney's Office assumed full control of the case. The prosecutor made the decision to proceed with the case and a grand jury indicted Plaintiff based on the evidence presented. The record also establishes that Defendant Gore accurately conveyed to the prosecutor the information he learned in his post-indictment investigation. In short, there is no evidence in the record to demonstrate that Defendant Gore used process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge or that he had a primary motive in the use of process to accomplish an illegitimate end. Defendant Gore is therefore entitled to

summary judgment on Plaintiff's claim for malicious abuse of process.

With respect to Defendant Parker, there is no evidence that he was even present during the interview with Ms. Bundy or that he had any exculpatory information at any time that he withheld from the prosecutor. Defendant Parker is likewise entitled to summary judgment on this claim.

### C. Negligence

The essence of Plaintiff's case against Defendants is their negligence in investigating the case against her, particularly after she supplied Defendant Gore on December 2, 2008, with Ms. Bundy's name and city of residence and who she asserted was of legal age at the time the photographs were taken, and yet she was in jail until May 15, 2009, and the case continued until May 19, 2010, when the charges were dismissed following Defendant Gore's in-person interview of Ms. Bundy.

A law enforcement officer has the duty in any activity to exercise for the safety of others that care ordinarily exercised by a reasonably prudent and qualified officer in light of the nature of what is being done. *Weinstein*, 1996-NMSC-021, ¶ 121 N.M. at 653 (quoting *Cross v. City of Clovis*, 107 N.M. 251, 253 (1988)). The fundamental problem with Plaintiff's negligence claim, however, is that Section 41-4-12 of the NMTCA does not waive a law enforcement officer's immunity in an action for negligence standing alone. *Dickson v. City of Clovis*, 2010-NMCA-058, ¶ 19, 148 N.M. 831. Immunity is waived for negligence under Section 41-4-12 only if the negligence caused an enumerated tort or violation of rights. *Id.* ¶ 18 (quoting *Lessen v. City of Albuquerque*, 2008-NMCA-085, ¶ 35, 144 N.M. 314). However, "allegations of negligence based on one of the torts specified in Section 41-4-12 are appropriate only when a law enforcement officer's negligence allegedly caused a third party to commit one of the enumerated

9

intentional acts." *Id.* ¶ 20.[1]

Plaintiff alleges in her Amended Complaint that "[a]s a direct and proximate result of the negligence of Shawn Gore and Malin Parker, Plaintiff was arrested." (Am. Compl. (Doc. 40) ¶ 11.) She also alleges that she was incarcerated for 163 days, despite trying to explain to the arresting officers and detention staff that there was an error. (*Id.* ¶ 13.) Plaintiff contends that the NMTCA waives immunity in this case because Defendants' negligent investigation resulted in Ms. Gilpin's improper arrest, incarceration, and prosecution. Plaintiff's argument could thus reasonably be construed as alleging that Defendants' negligent investigation caused a third party to commit the enumerated torts of false arrest, false imprisonment, and malicious prosecution.

None of the cases cited by the parties involve a claim of negligence based on a law enforcement officer's negligent investigation that caused the underlying tort of false arrest, false imprisonment, or malicious prosecution. Instead, the cases cited by the parties involve a situation where an officer's negligence has caused a third person to commit a battery or when a supervisory officer's negligent supervision or training caused a subordinate officer to commit an enumerated tort. *See*, *e.g.*, *Torres v. State of New Mexico*, 119 N.M. 609, 611-12, 616 (1995) (holding that Section 41-4-12 allowed negligence claim to proceed against law enforcement officers where their alleged negligence in failing to apprehend suspect caused suspect to murder two victims in another state); *Bober v. New Mexico State Fair*, 111 N.M. 644, 654 (1991) (noting that negligence cases previously brought under Section 41-4-12 involved assaults by third parties on the respective

---

[1] Contrary to Plaintiff's argument, an officer may not be liable under the NMTCA where his negligence results generally in an injury to any foreseeable victim. Section 41-4-12 only waives immunity for an officer's negligence that resulted in injury to a foreseeable victim where the negligence caused a third party to commit an enumerated act. *Dickson*, 2010-NMCA-058, ¶ 20.

10

victims, caused by the negligent inaction of law enforcement officers); *California First Bank v. State*, 11 N.M. 64, 66, 75 (1990) (holding that Section 41-4-12 waives immunity for claim that deputies negligently failed to investigate and apprehend drunk driving suspect and that failure proximately caused wrongful death of persons struck by suspect's vehicle); *Schear v. Bd. of County Comm'rs*, 101 N.M. 671, 672-73 (1984) (reversing dismissal of complaint alleging that sheriff's officers' negligent response to call reporting crime in progress resulted in plaintiff being raped by third party); *Blea v. City of Espanola*, 117 N.M. 217, 220-21 (Ct. App. 1994) (reversing dismissal of claim that officers' negligence caused third party to drive while intoxicated and collide with vehicle being driven by plaintiff's decedent); *Ortiz v. New Mexico State Police*, 112 N.M. 249, 252 (Ct. App. 1991) (holding law enforcement officers liable when negligent supervision and training of subordinates leads to battery). It is therefore not clear whether the New Mexico courts would recognize a waiver under the NMTCA for the negligence theories asserted here. It is particularly unclear whether the New Mexico courts would recognize a claim against a law enforcement officer for negligent investigation that caused a prosecutor to commit the tort of malicious prosecution, given that the prosecutor herself is immune from a malicious prosecution suit under the NMTCA. *See*, *e.g.*, *Coyazo v. State*, 120 N.M. 47, 49-51 (Ct. App. 1995) (district attorneys and their staffs do not fall within "law enforcement officer" exception from immunity under the NMTCA). Assuming, however, that such negligence theories would be recognized in principle, the Court nevertheless concludes that Defendants cannot be held liable for the alleged negligence in their investigation because the facts in the record do not show that the alleged third party committed the respective torts of false arrest, false imprisonment, or malicious prosecution.

Defendants cannot be held liable for the alleged negligent investigation that caused another officer to falsely arrest Plaintiff. As outlined above, probable cause existed to arrest Ms. Gilpin at the time of her arrest. The officers who executed the arrest warrant thus did not falsely arrest or imprison her, because they did not have knowledge that they had no lawful authority to arrest her.

The next question is whether Defendants' alleged negligent investigation caused a third party – the prosecutor – to maliciously prosecute Ms. Gilpin. Defendants argue that the existence of probable cause also defeats this theory. The Court agrees. The malicious abuse of process tort requires Ms. Gilpin to prove misuse of a judicial process and that the prosecutor's primary motive in the use of process is to accomplish an illegitimate end. *See Durham*, 2009-NMSC-007, ¶ 29. There is no evidence of that here. Notably, a grand jury considered the evidence presented by the prosecution and determined there was probable cause to proceed. The only possible evidence of improper motive by the prosecutor is the inference to be made by her decision to proceed despite having information that Ms. Bundy may have been the female in the photographs and may have been of legal age at the time of the photographs. The undisputed evidence shows that Ms. Mowrer refused to dismiss the case without more concrete evidence of when the photographs were taken, whether Ms. Bundy indeed was the female in the photographs, and Ms. Bundy's age at the time. Ms. Mowrer's opinion regarding what evidence was needed to vitiate probable cause was not so unreasonable as to demonstrate an improper purpose.

During the period between Plaintiff's arrest and indictment, Defendant Gore was unsuccessful in his attempts to find and identify Ms. Bundy, so Ms. Mowrer had nothing other than a self-serving exculpatory statement by Plaintiff, which by itself was not sufficient to undermine probable cause. It was not until May 11, 2009, that Defendant Gore received a telephone number

12

for Ms. Bundy from Plaintiff's public defender.  That very day, Defendant Gore called on the phone and spoke to a female identified as Ms. Bundy who said the photograph was taken of her when she was over 21 years of age.  Defendant Gore requested she send a copy of her driver's license and try to get specific dates for when the photographs were taken.  It is undisputed that Defendant Gore related this conversation to Ms. Mowrer.  Three days later, on May 14, 2009, in a hearing before the district court, Ms. Mowrer, in light of the additional evidence, did not oppose Plaintiff's request to release her from custody pending trial, further indicating that Ms. Mowrer did not harbor an improper or illicit motive in prosecuting Plaintiff.

Subsequently, Ms. Mowrer received a copy of Ms. Bundy's driver's license.  Based on her awareness that driver's licenses can be forged or altered and that it is difficult to tell the authenticity of a driver's license by looking at its photocopy, Ms. Mowrer believed that there was not sufficient evidence for the State of New Mexico to dismiss the charges against Plaintiff.  On May 18, 2009, Ms. Mowrer suggested that Defendant Gore have a law enforcement officer from Toledo meet with Ms. Bundy in person to obtain a firm identification and date certain on which the photographs were taken.  A detective from Toledo made several unsuccessful attempts to contact Ms. Bundy, and when he finally contacted her, she could not establish a firm date on which they had been taken.

On July 20, 2009, Plaintiff's public defender filed a motion to dismiss with the state court. Ms. Mowrer opposed the motion, arguing that there were fact issues for the jury to decide regarding whether Ms. Bundy is the person in the photographs and her age at the time the photographs were taken.  The state district court held a hearing on the motion to dismiss and denied it on September 8, 2009.  Again, the fact that the judge in the state district court case

considered the exculpatory evidence and the reasons for the prosecution to continue the case, and allowed the case to proceed, demonstrates that there was probable cause for Ms. Mowrer to proceed with the prosecution.  Ms. Mowrer ended her prosecution after Defendant Gore interviewed Ms. Bundy in person and was able to confirm, to his satisfaction, that she was the person in the photographs and believed her statement that she was 23 years old at the time the photographs were taken.  Based on these facts, Plaintiff cannot prove the underlying tort of malicious prosecution because she cannot prove that Ms. Mowrer improperly prosecuted the case or had a primary motive in the use of process to accomplish an illegitimate end.  Any negligence by Defendant Gore in not investigating the matter more quickly may have caused Ms. Mowrer to continue the prosecution for a longer period of time, but it did not cause her to *maliciously* continue that prosecution.  Because Plaintiff cannot prove the underlying tort of malicious prosecution or malicious abuse of process by the prosecutor, Defendants are entitled to summary judgment on Plaintiff's negligence claim.

**IT IS THEREFORE ORDERED** that Defendants Board of County Commissioners of Roosevelt County, Shawn Gore, and Malin Parker's Second Motion for Summary Judgment (**Doc. 42**) is **GRANTED** and Defendants Board of County Commissioners of Roosevelt County, Shawn Gore, and Malin Parker will be **DISMISSED WITH PREJUDICE** from this case.

_____
SENIOR UNITED STATES DISTRICT JUDGE